**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

VINCENT W. HREN,                          )
                                          )
    Appellant-Defendant,              )
                                          )
      vs.                          )          No. 32A01-1310-CR-436
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.               )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1301-FD-33

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Vincent W. Hren appeals the sentence he received following his conviction of Operating a Vehicle as a Habitual Traffic Violator[1] and Operating a Vehicle While Intoxicated (OWI),[2] both as class D felonies, as well as the determination that he is a habitual substance offender.[3] Hren presents the following restated issues for review:

1.     Did the trial court err in determining the statutory range for the habitual substance offender enhancement?

2.     Did the trial court err in failing to adequately take into account Hren's ability to pay trial and appellate attorney fees?

We affirm.

The evidence favorable to the convictions is that, as a result of multiple OWI convictions, Hren's driver's license was suspended for ten years, effective February 19, 2009. On the night of January 10, 2013, Hren asked nineteen-year-old Meron Gebreselassie, who was at Hren's house at the time, to drive him to the Meijer's store in Hren's truck. Gebreselassie had an "intellectually disability" and had never possessed a driver's license. *Appellant's Appendix* at 196. Gebreselassie agreed. Gebreselassie started the truck, put it in gear, forgot to apply the brake, drove into a shallow ditch, and struck a utility pole located only twenty or thirty feet from Hren's driveway. He then got out of the truck and ran home, which was approximately one mile away. Hren was left sitting in the truck.

---

[1] Ind. Code Ann. § 9-30-10-16(a)(1) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).
[2] I.C. § 9-30-5-2(a) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).
[3] Ind. Code Ann. § 35-50-2-10(b) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

At about this point, Officer Adam Barnhart of the Avon Police Department drove by and saw Hren's truck in the ditch. The officer drove down the street, turned around, and went back to the scene. By the time he got back, the truck had been backed into Hren's driveway. Officer Barnhart saw Hren exit the vehicle from the driver's side. No one else was in or around the truck. The officer approached Hren and noted that Hren's eyes were red and watery, his speech was slurred, he was unsteady on his feet, and he exuded a strong odor of alcohol. A subsequent test reveal that Hren's blood-alcohol content (BAC) was .024%. The officer asked Hren what had happened and Hren responded that he did not drive the vehicle. Noting that Hren was alone in the vehicle, the officer asked who had been driving it, and Hren responded: "some Ethiopian kid was driving." *Id*. at 195. When Hren provided more details about the driver, Officer Barnhart recognized that Hren was talking about Gebreselassie, who the officer knew from his time working security at Avon High School. Two other officers were dispatched to Gebreselassie's house in order to question him. Gebreselassie's description of what had happened was consistent with the account set out above.

Hren was ultimately convicted as set out above and found to be a habitual substance offender (HSO). Following a sentencing hearing, Hren was sentenced to three years for the OWI offense, which was enhanced by five years as a result of Hren's HSO status. He also received a three-year sentence for the habitual traffic violator offense, which was to run concurrent with the other sentence. Thus, the aggregate sentence was eight years, with two

3

years suspended to probation. In addition, the court ordered Hren to reimburse Hendricks County a total of $4000. Further facts will be provided where relevant.

1.

Hren contends the trial court erred in determining the statutory range of his HSO enhancement. With respect to sentencing decisions, we review a trial court's legal conclusions using a de novo standard of review. *Brattain v. State*, 777 N.E.2d 774 (Ind. Ct. App. 2002). Hren's trial was conducted in three stages. The first phase involved the charge that Hren had operated a vehicle while intoxicated. In the second phase of the trial, the jury was asked to decide whether Hren committed the offense of operating a vehicle with a prior OWI conviction within the last five years. In this phase, the State presented evidence that, on December 8, 2008, Hren was convicted of OWI as a Class D felony under Cause No. 32D03-0809-FD-181 (FD-181). The jury found that the State had met its burden of proof in this phase, which resulted in an elevation of Hren's OWI offense from a Class A misdemeanor to a Class D felony.

In the third and final phase, the jury was asked to decide whether Hren was guilty of operating a vehicle while a habitual traffic violator and whether he was a habitual substance offender (HSO). In this phase, the State presented evidence that, under Cause No. 32D03-0203-CM-119 (CM-119), Hren was convicted of OWI as a Class A misdemeanor on November 13, 2002. The State also presented evidence that, under Cause No. 32D02-0604-FD-135 (FD-135), he was convicted of OWI as a Class D felony on February 20, 2007. Also in this phase, the trial court granted the State's request to incorporate evidence from the

4

preceding phases into phase three. The trial court granted the request and instructed the jurors that they were allowed to consider evidence from phases one and two in reaching a decision as to phase three. The jury found Hren guilty of operating a vehicle while a habitual traffic violator and also found that he was a habitual substance offender.

The pre-sentence investigation reports prepared for use at sentencing reflected that the present case constitutes Hren's sixth OWI conviction. FD-181 was the most recent of the prior convictions. In that case, he was released on parole on February 18, 2010, and discharged from parole on June 23, 2011. The present offenses were committed approximately eighteen months after he was released from parole. Therefore, the State argued at sentencing that, pursuant to I.C. § 35-50-2-10, the appropriate range for his habitual substance offender enhancement was three to eight years. Hren did not challenge that assertion at the sentencing hearing. Hren claims on appeal, however, that the trial court misconstrued or misapplied I.C. § 35-50-2-10(f)(1), which provides, in relevant part:

> The court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment, to be added to the term of imprisonment imposed under IC 35-50-2 or IC 35-50-3. If the court finds that:
>
> > (1) three (3) years or more have elapsed since the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated substance offense conviction and the date the person committed the substance offense for which the person is being sentenced as a habitual substance offender …
>
> then the court may reduce the additional fixed term. However, the court may not reduce the additional fixed term to less than one (1) year.

5

In a nutshell, Hren contends that his sentencing was not controlled by the portion of I.C. § 35-50-2-10 providing that the enhancement must be for a period of at least three years because his situation meets the criteria set out thereafter for reducing the enhancement to not less than one year. Specifically, he contends that, with respect to the date of the present offense, three years or more have elapsed since the date he was discharged from parole for the prior unrelated substance offense. This argument, in turn, requires us to decide whether the "last prior unrelated substance offense conviction" refers only to the conviction or convictions specified by the State as the predicate offense or offenses upon which the habitual offender determination was made, or whether it refers to *any* qualifying prior offense proven at trial.

In phase two of Hren's trial, the State presented evidence that he was convicted under FD-181 of OWI as a Class D felony. The evidence further revealed that Hren was released from parole from that offense on June 23, 2011. This appears to satisfy the condition set out in I.C. § 35-50-2-10 that less than three years had elapsed from the time Hren was released from parole to the time he committed the present offense, thus rendering him ineligible for habitual offender enhancement of less than three years. Hren contends, however, that because FD-181 was not offered by the State to establish Hren's habitual offender status in phase three, then it cannot be used to establish the requisite timing sequence. In other words, Hren contends that the timing requirement must be satisfied by resort only to the prior offenses alleged by the State to prove his habitual offender status in phase three.

6

To the extent we must construe the meaning of I.C. § 35-50-2-10, we employ the following well-settled standard of review:

> "In interpreting statutes, we do not interpret a statute that is facially clear and unambiguous. Rather, we give the statute its plain and clear meaning." *Hampton v. State,* 921 N.E.2d 27, 30 (Ind. Ct. App. 2010) (internal quotations omitted), *reh'g denied, trans. denied.* "[I]f a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent." *Id.* "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Id.* (quoting *Abney v. State,* 811 N.E.2d 415, 419 (Ind. Ct. App. 2004), *adopted by* 821 N.E.2d 375 (Ind. 2005)). "[P]enal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature." *Id.* (quoting *Redden v. State,* 850 N.E.2d 451, 463 (Ind. Ct. App. 2006) (quoting *Baird v. State,* 604 N.E.2d 1170, 1190 (Ind. 1992), *cert. denied,* 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993)), *trans. denied* ). "Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning." *Id.* (quoting *Merritt v. State,* 829 N.E.2d 472, 474 (Ind. 2005)). "We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice." *Id.*

*White v. State*, 961 N.E.2d 54, 55-56 (Ind. Ct. App. 2012) (quoting *Buchanan v. State*, 956 N.E.2d 124, 128–29 (Ind. Ct. App. 2011)), *trans. denied*.

The plain text of I.C. § 35-50-2-10 provides that a defendant is not eligible for the reduced, minimum one-year enhancement if he or she has an offense for which less than three years have elapsed between the date of the present offense and the date the defendant was discharged from prison, probation, or parole. We find no mention in the text of the statute of a third qualification, i.e., that said predicate conviction must have been one that was specifically offered to prove HSO status. To be sure, the State must offer proof of this offense, and may not merely allege it. In most cases, we presume that the predicate offenses

7

offered to prove HSO status will, in fact, be the same offenses that would be used to prove that the defendant is not eligible for the decreased minimum enhancement.

In the present case, FD-181 was initially offered in phase two to prove Hren had committed an OWI offense with a previous OWI offense in the last five years. In the second phase, the jury found that he had committed FD-181. Moreover, during phase 3, the trial court granted the State's motion to incorporate the evidence pertaining to FD-181 into the phase-three evidence. Therefore, we conclude that the trial court did not err in considering FD-181 when determining the range of Hren's HSO enhancement. Pursuant to the foregoing guidelines, the trial court did not err in concluding that the range of Hren's HSO enhancement was between three and eight years.

2.

Hren challenges the imposition of fees. In Indiana, three statutes authorize trial courts to impose public defender fees. The three statutes are separate from one another and impose different requirements. Those statutes are: Ind. Code Ann. § 33-40-3-6 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014); Ind. Code Ann. § 33-37-2-3 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014); and Ind. Code Ann. § 35-33-7-6 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014). The trial court did not specify upon which of these provisions the order for Hren to pay attorney fees and costs was

based.  Hren's analysis, however, discusses only one of the above statutes – I.C. § 33-40-3-6.

 Therefore, we will focus our analysis on this statute as well.

I.C. § 33-40-3-6(a) provides as follows:

If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter, the court shall require payment by the person or the person's parent, if the person is a child alleged to be a delinquent child, of the following costs in addition to other costs assessed against the person:
(1) Reasonable attorney's fees if an attorney has been appointed for the person by the court.
(2) Costs incurred by the county as a result of court appointed legal services rendered to the person.

I.C. § 33-40-3-7 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014) sets out the factors trial courts must consider in making this determination, as follows:

(a) If a defendant or a child alleged to be a delinquent child is receiving publicly paid representation, the court shall consider:

(1) the person's independently held assets and assets available to the spouse of the person or the person's parent if the person is unemancipated;

(2) the person's income;

(3) the person's liabilities; and

(4) the extent of the burden that payment of costs assessed under section 6 of this chapter would impose on the person and the dependents of the person.

(b) If, after considering the factors described in subsection (a), the court determines that the person is able to pay the costs of representation, the court shall enter a finding that the person is able to pay those additional costs.

9

The record reflects that evidence was adduced at sentencing that bore upon the factors set out in I.C. § 33-40-3-7. Hren testified that his late father's home was worth $300,000 and that he was to share in the proceeds with his siblings after the house was sold. He also testified that he owned a Harley Davidson motorcycle, worth approximately $5000, and six mopeds, whose collective value was estimated at approximately $5000. He owned these vehicles "free and clear". *Transcript* at 443. At the time of sentencing, he had an inheritance check in the amount of $4000. He also testified that upon his release from prison he would work at his cousin's business, working twenty to thirty hours per week at fourteen dollars an hour. He also indicated that he earns about $500 a month from selling firewood and donating plasma. Hren testified that he has no current financial liabilities and was living rent-free in his father's home. Thus, the court had before it evidence from which it could assess Hren's independently held assets, his income, and his liabilities. This enabled the court to determine the extent to which the payment of costs would impose a burden upon him. After considering this evidence, the court determined that, using the $4000 inheritance check, Hren would reimburse Hendricks County for $2000 in travel expenses plus the cost of the clothing purchased for his use at trial. The court further ordered that the balance of the funds from that check would be used to pay expenses associated with his appeal.

The foregoing reflects that the court did indeed inquire into the relevant factors set out in I.C. § 33-40-3-7. As for the requirement that the court must enter a finding that the defendant is able to pay costs, *see* I.C. § 33-40-3-7(b), the court stated the following at sentencing:

> With regard to the balance of the $4000 check though I am ordering that that be remanded or paid over to Hendricks County to cover the costs of any portion of the costs of the appeal. *You can pay some of it you may not be able [sic] all of the bill but you can afford to pay some of it with the $4000 asset hanging out there with the other assets you have available.*

*Id.* at 466-67. When, after hearing the court's decision, Hren complained "that's all the money I got", the court responded that Hren retained in toto his interest in his father's home, as well as his motorcycle and mopeds. *Id.* at 467. We reject Hren's claim that the court's review of Hren's financial circumstances was too cursory to satisfy the requirements of I.C. § 33-40-3-7. The trial court did not err in ordering Hren to pay costs.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.

11